

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable A. J. Hutson, Jr.
County Attorney
Trinity County
Groveton, Texas

Dear Sir:

Opinion No. O-5258
Re: Permissibility, under Article 7166, R.C.S., of deducting from the "actual value" of bank shares the value of real property which had been owned by the bank for a longer period than that permitted by statute.

Your opinion request, dated April 22, 1943, reads in part:

"The Tax Collector of Trinity County, Texas, has requested an opinion on the following question relative to the assessment of banks:

"Where a bank has part of its capital stock invested in real estate, and, as required by law, the real estate is rendered as such, and the value thereof is considered and deducted from the value of the shares of said bank, and the bank has been obliged to charge the real estate off their books on account of it having been carried the limit of time allowed by the banking department, would it be lawful to deduct also from the value of the shares the amount charged off the books of the bank because of the real estate?

"It is my opinion that the question should be answered in the negative. R. C. S. Art. 7165 and Art. 7166."

Under Articles 7165 and 7166, R. C. S., the real property of a bank is taxed against the bank, while the personal property is taxed against its shareholders. Engelke v. Schlenker, 75 Tex. 559, 12 S. W. 999, City of Marshall v. State Bank of Marshall, 127 S. W. 1083 (error refused), 6 Tex. Jur. 346, et seq. The method by which the personal property is taxed against the shareholders is established by the following portion of Article 7166:

"Every shareholder of said bank shall, in the city or town where said bank is located, render at their actual value to the tax assessor all shares owned by him in such bank; and in case of his failure so to do, the assessor shall assess such unrendered shares as other unrendered property. Each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. . . . " (Emphasis added)

Although the aggregate "actual cash value" of the shares of a bank normally is based upon the value of its franchise, capital, and property of all kinds, less the amount of its debts, Rosenberg v. Weekes, 67 Tex. 578, 584, 4 S.W. 899, "it is proper for the assessor or the board to consider all elements which tend to compose or augment the value of the stock in the hands of the individual stockholder." 6 Tex. Jur., p. 348. From the value thus obtained is to be deducted the proportionate amount per share at which the real estate of the bank is assessed. See our Opinions Nos. 0-2406, 0-3563 and 0-1214, enclosed herewith, for different applications of this formula. The obvious purpose of the formula was to obtain the value of all assets of the bank, except real estate, and to tax such assets proportionately against the shareholders.

As we understand your letter, you pose a situation in which the aggregate "actual cash value" of the shares has been correctly ascertained and the assessed value of the real estate has been properly determined and deducted from the value of the shares. You desire to know whether a still further deduction may be made for land which the bank has been forced to write off its books because it has been held longer than permitted by statute, or, stated differently, whether such land may be deducted twice, once because the tax thereon is charged against the bank and once because it is no longer a book asset of the bank. We concur in your opinion that such double deduction is not permissible.

Article 514, R. C. S., as amended, provides:

"Banks and Bank and Trust Companies created under this Title shall own only such real state (estate) as may be acquired for the transaction of their business, and such as they may acquire in the enforcement and collection of debts and liabilities due to them, which lands so acquired by any such corporation shall be alienated by it within five years after its acquisition; it shall not hold such property for a longer period unless it shall procure a certificate from the Banking Commissioner that its interests will suffer materially by the forced sale thereof; in which event the time for the sale may be extended from year to year as the Commissioner shall direct in such certificate, not to exceed an additional five years, but in no event shall a Bank or Bank and Trust Company own such real estate for a period longer than ten years; provided that any and all sales of real estate to officers, directors or stockholders of such Bank and Bank and Trust Company shall be made only upon the consent of a majority of such stockholders."

Regardless of whether land held in violation of this Article escheats to the State, it is plain that land held by a bank in violation of the similar but more liberal provisions of Chapter 4 of Title 32, R. C. S., is subject to forfeiture by appropriate escheat proceedings. Because of this liability to forfeiture, and for other reasons, the banking department has deemed it judicious that all land illegally held be written off the books of the bank. However, despite the fact that the land is illegally held, the bank holds title thereto and such title is good against all persons except the State. Campbell v. Hood, 35 S. W. (2d) 93 (Com. App.), Atlas Petroleum Corporation v. Galveston, H. and S. A. Ry. Co., 5 S. W. (2d) 215 (writ refused), Lee v. W. D. Hayden Co., 48 S. W. (2d) 476. Land so held remains an asset of the bank and may, we feel, be assessed against the bank and form a part of the "actual cash value" of the shares of the bank under Article 7166. The possibility that the land may be forfeited to the State may, it is true, result in its being assessed at a lower value than if the bank possessed a title good against the world, and may decrease the extent to which the land enters into the value of

the bank shares, but such land remains an asset of the bank and should be considered as such in the assessment of taxes.

In the situation which you have submitted, the "actual cash value" of the shares and the assessed value of the real estate of the bank have already been determined, presumably after any possible reduced value of any land held in violation of Article 514 has been considered. All that remains to satisfy the formula of Article 7166 is to deduct the latter value from the former. We find no authority either in the language or the intent of Article 7166 to justify the further deduction of that portion of the real estate which is held in violation of Article 514 or of Chapter 4 of Title 32.

As we have seen, the formula contained in Article 7166 was established to fix the value of bank property other than real estate and thus to aid in the taxing of such property against the shareholders of the bank. Obviously the formula cannot accomplish its purpose if this deduction is permitted, for land illegally held by the bank would be deducted twice, once because taxes thereon would be assessed against the bank and once because such land was charged off the books of the bank, with the net result that the property taxable against the shareholders would, to the extent of the value of such land, inevitably be reduced below its true value. To permit such a practice would be to disregard the express language of Article 7166 and to place a premium upon violations of the statutory provisions restricting the holding of land by banks and other corporations.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED MAY 5, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead
R. Dean Moorhead
Assistant

RDM:db

Enclosures

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN